UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID C. CHUA, as Trustee of the David C. Chua M.D. SC Ltd. 412(i) Defined Benefit Plan; DAVID C. CHUA, as Plan Participant; WENDY YEH, as Plan Participant; DAVID C. CHUA M.D. SC Ltd., as Plan Sponsor and Administrator, <br><br> Plaintiffs, <br><br> v. <br><br> LARRY SHIPPEE, BRUCE ASHTON, HEATHER BADER-ABRIGO, MARTIN HEMING, and REISH & REICHTER, P.C., <br><br> Defendants. | No. 13 C 383 <br><br> Judge George M. Marovich |

## MEMORANDUM OPINION AND ORDER

After things went sour with an ERISA defined-benefit plan called the David C. Chua M.D. SC Ltd. 412(i) Defined Benefit Plan (the "Plan"), several plaintiffs filed suit against the attorneys and the actuary who had given advice with respect to the Plan. The Plaintiffs are: David C. Chua ("Chua"), who sues as a Plan participant and as trustee of the Plan; Wendy Yeh ("Yeh"), a Plan participant; and Chua's medical practice, David C. Chua M.D. SC Ltd. ("Chua Medical"), which sues as the Plan sponsor and Plan administrator. The defendants are attorney Bruce Ashton ("Ashton"), attorney Heather Bader-Agrigo ("Bader-Agrigo"), attorney Martin Heming ("Heming"), the attorneys' law firm Reish & Reichter, P.C. ("Reish & Richter" or the "Firm") and actuary Larry Shippee ("Shippee"). Before the Court are two motions to dismiss, one filed by defendant Shippee and one filed by defendants Ashton, Bader-Abrigo, Heming and

Reish & Reichter (collectively, the "Reish attorneys"). For the reasons set forth below, the Court grants the motions to dismiss.

I. **Background**

This case concerns the use of a so-called 412(i) plan, which is an ERISA defined benefit plan under the old 26 U.S.C. § 412(i). (The relevant code provision is now located at 26 U.S.C. § 412(e)(3), but the parties still refer to the plan as a 412(i) plan, and so will this Court.) "To create a [412(i) plan], an employer establishes a trust to hold the plan's assets, and the trust uses tax-deductible employer contributions to purchase and maintain life insurance and/or annuity policies for the plans." *Drilling Consultants, Inc. v. First Montauk Securities Corp.*, 806 F. Supp.2d 1228, 1232 n.2 (M.D. Fla. 2011). A problem with 412(i) plans is that they can be used as abusive tax shelters. For example,

> An 'abusive' Section 412(i) plan involves the employer's contributing abnormally large amounts of cash to a trust. The trustee uses the cash to pay a high insurance premium, and the employer claims an income tax deduction for each contribution. As a result of the employer's large cash contribution, the policy accumulates over a few years an impermissibly large cash reserve. However, the policy carries a high 'surrender charge,' which disguises and suppresses the value of the policy's cash reserve. After five to seven years, a participant may purchase the policy from the trust for the 'surrender value,' the value of the policy's cash reserve reduced by the surrender charge. The purchase is 'tax-free,' and the surrender charge gradually decreases to zero within a few years after the purchase. Therefore, the policy increases dramatically in value. The high cash contribution and the high surrender charge–which result in a 'disconnection between the benefit [ ] provided by the insurance [policy]'–distinguishes an abusive Section 412(i) plan from a traditional Section 412(i) plan.

*Drilling Consultants*, 806 F. Supp.2d at 1232.

With that background in mind, the Court takes as true the allegations in plaintiffs' complaint. The Court also considers the documents attached to plaintiffs' complaint. Fed.R.Civ.P. 10(c). Plaintiff Chua is a medical doctor, and his wife Yeh is a dentist. Chua and

Yeh are participants in the Plan, which is a 412(i) plan sponsored by Chua Medical (Chua's medical practice).

Chua Medical adopted the Plan in or about December 2002, with Chua as trustee. Chua Medical adopted the Plan after Chua and Yeh met with defendant Shippee, who is an actuary. Shippee was in the business of designing, marketing and selling 412(i) plans. Shippee told Chua and Yeh that the particular type of 412(i) plan they were considering was safe, tax-advantaged and approved by the IRS. Shippee told Chua and Yeh that the plan he suggested was the "best plan available" and that the particular life insurance policies he recommended to fund the plan were "appropriate funding vehicles." (Complt. ¶ 26). What Shippee knew but did not tell Chua and Yeh was that the IRS had been warning for years that 412(i) plans could be abusive tax shelters. Shippee "was blinded by the lucrative prospect of reaping enormous premiums and commissions from selling their specifically designed plans and policies." (Complt. ¶ 25). "Based on Shippee's misrepresentations, in December 2002, the Chua Medical Group as sponsor ("Sponsor"), with Dr. Chua as Trustee, adopted the Plan (a 412(i) plan) and purchased life insurance policies that Shippee instructed [it] to use to fund the Plan." (Complt. ¶ 13).

At some point during the year 2004, the Internal Revenue Service ("IRS") issued Revenue Ruling 2004-20, which addressed 412(i) plans. In the revenue ruling, the IRS considered the situation where a 412(i) plan was funded by life insurance policies, the face value of which exceeded the death benefit payable under the plan such that life insurance proceeds that exceeded the benefits due to plan beneficiaries were used to pay premiums for other participants. Plaintiffs allege that their Plan was substantially the same as the plan considered by the IRS in Revenue Ruling 2004-20. In that Revenue Ruling, the IRS concluded:

> A qualified pension plan cannot be a section 412(i) plan if the plan holds life insurance contracts and annuity contracts for the benefit of a participant that provide for benefits at normal retirement age in excess of the participant's benefits at normal retirement age under the plan.

Revenue Ruling 2004-20 at 7. The upshot was that "[e]mployer contributions under a qualified defined benefit plan that are used to purchase life insurance coverage for a participant in excess of the participant's death benefit provided under the plan are not fully deductible when contributed, but are carried over to be treated as contributions in future years and deductible in future years . . ." Revenue Ruling 2004-20 at 7. Revenue Ruling 2004-20 also concluded that such a plan is a "listed transaction." (A listed transaction is one that is the same as or substantially similar to a transaction that the IRS has determined to be a tax avoidance transaction (26 U.S.C. § 6707A(c)(2)), and the failure to report a listed transaction can result in penalties.)

After Revenue Ruling 2004-20 was issued, Shippee failed to notify plaintiffs. Instead, Shippee:

> induced the Chuas to raise Dr. Yeh's salary in order to purchase additional PacLife policies funding the Plan which Plaintiffs did, on May 4, 2004, based on Shippee's misrepresentations. Shippee therefore controlled the nature of the assets funding the Plan and the amount of the assets funding the Plan.

(Complt. ¶ 34).

Plaintiffs allege that Shippee "became a functional fiduciary of the Plan by: (a) [c]ontrolling the type and nature of the assets, and the amount of assets for Plan funding; (b) [c]ontrolling the type and issuing insurance company of annuities and insurance policies funding the Plan; (c) [c]ontrolling the size of contribution/premium deposited into the Plan each year and, as a consequence, the deduction taken by Plaintiffs on Tax Returns; (d) [c]ontrolling what

-4-

appeared on Form 5500s and Form 5330s in terms of substantive entries on those Forms and whether these Forms were filed with the IRS and/or DOL; (e) [c]ontrolling how assets funding the Plan were valued and, as a consequence, controlling whether the Plan was adequately or over-funded each Plan Year; (f) [c]ontrolling which employees participated in the Plan by representing to Plaintiffs which employees were eligible for Plan participation; (g) [c]ontrolling the opportunity for the Plan to be corrected and benefits preserved by controlling what information was relayed to the Plan Sponsor, the Chua Medical Group and Plan Trustee, Dr. Chua." (Complt. ¶ 35).

In November 2005, the IRS announced a Global Settlement Initiative, under which 412(i) plans like the Plan in this case could voluntarily settle their tax liability and penalties. The IRS also announced that all such plans that did not come forward would be audited. Shippee failed to inform plaintiffs about the IRS's Global Settlement Initiative. At some point thereafter, the IRS announced it was auditing: (i) the Plan's Form 5500 (the form ERISA plans use to report their financial condition, investments and operations), (ii) Chua Medical (the Plan sponsor) and (iii) Chua and Yeh (as owners of the pass-through entity, the Chua Medical).

Shippee advised Chua to hire the law firm Reish & Richter in connection with the audit. Defendants Ashton, Bader-Abrigo and Heming are attorneys who were, during the relevant time period, associated with Reish & Richter. Before hiring the Reish attorneys, Chua spoke with defendant Ashton. "Ashton assured Dr. Chua that he and the Reish attorneys had significant experience with 412(i) plans and would represent all three entities being audited by the IRS in Plaintiffs' best interests." (Complt. ¶ 15). Ashton, however, left out a few details. For example, Ashton failed to tell Chua and Yeh that Chua and Yeh, as participants, had a conflict of interest

with the Plan. Ashton also failed to mention that he and his fellow attorneys at Reish & Richter had interests at odds with plaintiffs, because the attorneys designed 412(i) plans and therefore had an incentive to argue that such plans were legal. Ashton also failed to tell Chua and Yeh about Revenue Ruling 2004-20 and that the Plan was overfunded due to excessive death benefits. Finally, Ashton failed to tell Chua and Yeh that they should hire a different actuary; instead, Ashton "insisted" that plaintiffs continue to use Shippee. (Complt. ¶ 41). Still, Chua hired the Reish attorneys, and the attorney-client relationship began with a fee agreement.

In February 2007, "Dr. Chua, individually and on behalf of the [sic] David C. Chua M.D. SC Ltd., entered" a fee agreement with Reish & Richter. (Complt. ¶ 16). The fee agreement described the "Scope of Services" as providing "all legal services reasonably required to represent David C. Chua M.D. PC Ltd. in connection with the following matters: advise regarding 412(i) plan audit; such other services as we may agree upon from time to time." (Complt. Exh. 4 at 1). The fee agreement also contained the following arbitration provision:

> In the event of a dispute arising from this Agreement, including, without limitations, the interpretations hereof and the performance hereunder, the parties agree to try in good faith to resolve the dispute through mediation by selecting a third party to help them reach an agreement. If they are unable to resolve the dispute through mediation within sixty (60) days from the date notice is first given by one party to the other as to the existence of such a dispute, they agree to submit to resolution by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "Rules").

(Complt. Exh. 4 at 4). The Reish defendants then filed a power of attorney form with the IRS on behalf of each of the following: (i) the Plan, (ii) Chua Medical and (iii) Chua and Yeh.

Plaintiffs allege that the Reish attorneys failed to represent them adequately. When plaintiffs hired the Reish attorneys, the Reish attorneys knew the Plan was overfunded for the years 2002 through 2007. Therefore, the Reish attorneys should have filed forms 5500 and 5300

for the Plan. They did not, which lead to "huge excise tax penalties." At some point, as a result of the audit, the IRS issued its IRS Examining Agent Report, in which it stated that the Plan was substantially similar to the plan in Revenue Ruling 2004-20 and that the Plan should have disclosed the fact by filing form 8866 for the years 2004 and 2005. At this point, plaintiffs allege, the Reish attorneys (and Shippee) should have "advise[d] and direct[ed] Plaintiffs to concede to the IRS, to void and convert the [Plan], and pay the IRS penalty to avoid additional excise taxes and interest charges." (Complt. ¶ 55). Instead, on August 3, 2007, the Reish attorneys (and Shippee) wrote a letter to the IRS in which they challenged the conclusions in the IRS Examining Agent Report. Specifically, the Reish attorneys argued to the IRS that the Plan did not contain "excessive death benefits" when they knew, in fact, that it did. (Complt. ¶ 59).

On July 28, 2008, the IRS issued a notice of proposed penalties. In the notice, the IRS proposed that Chua Medical pay a penalty of $200,000 for the tax year ending December 31, 2004 and $200,000 for the tax year ending December 31, 2005, pursuant to Internal Revenue Code 6707A for failure to disclose a reportable transaction. Plaintiffs allege that, at this point, too, the Reish attorneys should have advised them to concede. Instead, on September 15, 2008, the Reish attorneys sent a letter to the IRS to appeal the penalties. In the letter, the attorneys again argued that the Plan did not contain excessive death benefits.

Ultimately, the IRS assessed Chua Medical penalties of $600,000 ($200,000 for each of the years 2004, 2005 and 2006), but the IRS later reduced the penalties to about $269,000, due to a change in the law. Chua Medical paid the penalties via check.

The Reish attorneys' representation of plaintiffs went beyond the IRS audit. It "included advice and counsel and overt control regarding such discretionary transactions as correcting the

Plan as to the nature and funding level of its assets; freezing the Plan; terminating the Plan; converting the plan to a cash balance plan; and the form and substance (and whether to file) required disclosures for the Plan." (Complt. ¶ 69). The Reish attorneys failed the plaintiffs with respect to these issues, as well.

> Plaintiffs allege that the Reish attorneys became fiduciaries of the Plan "when:
>
> (a) Reish assumed responsibility for filing, but decided not to file, Form 5500s and 5330s for the Plan in order to 'hide' the Plan from the IRS; (b) Reish assumed responsibility for disclosing, but failed to disclose, the Plan's status as a listed transaction to Dr. Chua as Trustee and to make the same disclosure to the IRS; (c) Reish assumed responsibility for correcting, but failed to correct, the Plan and disclose it to the IRS as legally required; (d) Reish assumed responsibility for assuring, but failed to assure, the Plan received representation in its audit that was not subject to a professional conflict of interest; (f) [sic] Reish assumed responsibility for assuring, but failed to assure, the Plan was served by an actuary that was not subject to a conflict of interest and motivated by a desire to retain profits in the form of commissions paid by PacLife on policies which funded the Plan; (g) Reish assumed responsibility for correcting, but did not correct the Plan's funding vehicle by replacing the PacLife policies with other lawful funding, such as bonds, securities and cash; (h) Reish assumed responsibility for protecting, but failed to protect the participants' rights to promised Plan benefits by failing to take action to protect the Plan's status as a qualified defined benefit pension plan. . . .; and (i) Reish's representation extended beyond the audits and included advice and counsel and overt control regarding such discretionary transactions as correcting the Plan as to the nature and funding level of its assets; freezing the Plan; terminating the Plan; converting the plan to a cash balance plan; and the form and substance (and whether to file) required disclosures for the Plan.

(Complt. ¶ 47). Plaintiffs also allege that the following facts show that the Reish attorneys "assumed responsibilities pursuant to which they became fiduciaries of the Plan":

> (a) July 24, 2008, Reish letter to IRS re: 'David C. MD SC Ltd. 412(i) Defined Benefit Plan' stating 'in connection with the conversion of the . . . plan, enclosed please find the following conversion calculations . . .'; (b) September 17, 2008, email from IRS Agent Kowalski sent Defendants (attn: Bader-Abrigo) attaching spreadsheets for the actuary to complete stating once they were complete 'we can proceed with the change in funding method for this taxpayer'; (c) December 11,

2008, letter from Reish to Ming Ming Tong a letter re: 'David C. Chua MD SC Ltd. 412(k) Defined Benefit Plan' stating 'we are looking to whether the Plan can and/or should be converted to a traditional defined benefit plan'; (d) January 8, 2009, PacLife letter to Defendants (attn: Aston [sic]) regarding 'David C. Chua MD SC Ltd. 412(i) Plan' stating 'this is a follow up . . .. as to why the policies could not be frozen'; (e ) May 27, 2009, email from Reish (by Bader-Abrigo) to Carl Hossli stating she wanted 'to reach out to you before putting something in formal writing about what options Dr. Chuas [sic] has with respect to the David C. Chua MD SC Ltd. 412(i) Plan'; (f) on April 8, 2009, the IRS sent Defendants (attn: Bader-Abrigo) a letter regarding 'Form Number 5500 and related [5330]'; (h) June 4, 2009 email from PacLife to Reish responding to Reish's May 27, 2009 email asking 'for options regarding the policies and annuities in Dr. Chua's defined benefit plan'; (i) July 29, 2009 email from Reish (by Bader-Abrigo) to Dr. Yeh stating '[w]e should probably discuss whether the DP plan should be terminated or keep it frozen'; (j) February 4, 2010 letter from the IRS to Reish (attn: Bader-Abrigo) transmitting 'enclosed material under the provisions of your power of attorney' for the 'David C. Chua MD SC Ltd. 412(i) Defined Benefit Plan' for 'Form Number 500 and related [5330]' . . .

(Complt. ¶ 74).

Defendant Shippee has filed one motion to dismiss, and defendants Ashton, Bader-Abrigo, Heming and Reish & Richter have filed another.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause

of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

### III. Discussion

#### A. Arbitration

Defendants Reish & Richter, Ashton, Bader-Abrigo and Heming move to dismiss the claims of plaintiffs Chua and Chua Medical, because those plaintiffs signed a contract which included an arbitration clause.

The Federal Arbitration Act "embodies both a 'liberal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, __ U.S. __, __, 131 S.Ct. 1740, 1745 (2011)). "Once it is clear . . . that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of the arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032.

These parties do not dispute the existence of the arbitration agreement or that the scope of the agreement is broad enough to cover the claims asserted in this case. That makes sense, because, in their complaint, plaintiffs allege that Chua and Chua Medical "entered" the fee agreement in which the arbitration clause is contained. Instead, Chua and Chua Medical argue that the arbitration agreement should not be enforced against them for two reasons.

First, Chua and Chua Medical argue that they are not bound by the arbitration agreement, because, when they signed the fee agreement which contains the arbitration clause, they were signing in capacities different from the capacities in which they are suing. The Court does not find this argument compelling. When Chua signed the fee agreement, he signed it on behalf of himself, individually, and on behalf of Chua Medical. Chua and Chua Medical were parties to the fee agreement in their capacity as clients of the Reish attorneys. Plaintiffs argue that Chua Medical is suing as Sponsor of the Plan, but that is one of the capacities in which the attorneys represented it. Plaintiffs also argue that Chua is suing, not individually, but as trustee of the Plan and as a Plan participant. Plaintiffs, however, allege in their complaint that "Reish represented all three parties (and plan participants) before the IRS in the audits" (Complt. ¶ 48), so Reish represented Chua in all of his capacities. Chua did not sign the fee agreement in a capacity separate from that in which he sues. Chua and Chua Medical are bound by the agreement Chua signed.

Chua and Chua Medical also argue that the arbitration agreement should not be enforced in this case, because their ERISA claims are within the exclusive jurisdiction of federal courts. Although plaintiffs are correct that ERISA claims are within the exclusive jurisdiction of federal (as opposed to state) courts, arbitration of ERISA claims is not precluded by that exclusive

-11-

jurisdiction. *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) ("To date, four circuits have held that Congress did not intend to prohibit arbitration of statutory ERISA claims.") (collecting cases); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 120 (2d Cir. 1991) ("[T]he fact that Congress provided for exclusive federal jurisdiction of claims brought to enforce ERISA's substantive provisions . . . speaks only to which judicial forum is available.").

The Court concludes that the claims filed by Chua and Chua Medical against Ashton, Bader-Abrigo, Heming and Reish & Richter are subject to arbitration. Accordingly, Chua and Chua Medical's claims against those defendants are dismissed without prejudice, so that the parties may arbitrate those claims.

**B.     Plaintiffs' claims for breach of fiduciary duty**

**1.     Count I**

In Count I, plaintiffs asserts that defendants breached their fiduciary duties under ERISA. To state a claim for breach of fiduciary duty under ERISA, plaintiffs must plausibly allege: (1) a private right of action under ERISA (i.e., that each plaintiff is either a plan fiduciary, a beneficiary or a participant); (2) that each defendant was a plan fiduciary; (3) each defendant's breach of its fiduciary duty; and (4) a "cognizable loss to the plan flowing from that breach." *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009). Any recovery on a claim for breach of fiduciary duty inures to the benefit of the plan. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

Defendants argue that Count I should be dismissed for two reasons. First, defendants argue that the plaintiffs have failed to allege that the Plan suffered a loss. Second, defendants argue that plaintiffs have failed to allege plausibly that defendants engaged in fiduciary acts.

The Court agrees that plaintiffs have failed to allege a loss to the Plan. The only damages alleged in the complaint are the penalties Chua Medical paid to the IRS. Nowhere in the complaint do plaintiffs allege any loss suffered by the Plan. Accordingly, Count I must be dismissed for that reason.

That is not the only reason Count I must be dismissed. The Court also agrees with defendants that plaintiffs have failed to allege that the defendants were engaged in fiduciary acts when taking the actions that are the subject of the complaint. ERISA defines the functions of a fiduciary. It states, in relevant part:

> a person is a fiduciary with respect to the plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Under ERISA, one can be a fiduciary for some tasks and not a fiduciary for others, so a "threshold question" is "whether [defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Certain actions, such as settlor functions (adopting, modifying or terminating plans) are simply not fiduciary functions under ERISA. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

The Court first considers plaintiffs' allegations with respect to the Reish attorneys. Plaintiffs have done an excellent job alleging the existence of an attorney-client relationship between plaintiffs and the Reish attorneys. Plaintiffs allege: that the Reish attorneys filed with the IRS power-of-attorney forms on their behalf; that the Reish attorneys appealed IRS decisions

on their behalf; and that the Reish attorneys sent letters and emails on their behalf. Plaintiffs have also done an excellent job alleging that they were poorly represented: they have alleged that the Reish attorneys misrepresented facts and law to them and to the IRS; they have alleged that the Reish attorneys gave them bad advice; and they have alleged that the Reish attorneys should have advised them to stop fighting the IRS. Such allegations may have the makings of a malpractice suit. They do not, however, establish that defendants acted as fiduciaries, because plaintiffs have not alleged anything that suggests the Reish attorneys controlled whether plaintiffs followed their advice.

In attempting to show that defendants are fiduciaries, it is not enough to show that a defendant has *influence* over plan decisions. What is essential is the power to make decisions for the plan. *Associates in Adolescent Psychiatry v. Home Life In. Co.*, 941 F.2d 561, 570 (7th Cir. 1991). As the Seventh Circuit explained in *Home Life*:

> That lawyers, accountants, and actuaries may render services to employers, plan trustees, and plan beneficiaries does not give them any decision-making authority over the plan or plan assets; the power to act for the plan is essential to status as a fiduciary under ERISA.

*Home Life*, 941 F.2d at 570. In *Pappas v. Buck Consultants, Inc.*, the Seventh Circuit rejected the notion that "consultants become fiduciaries when they perform professional functions in a tortious manner, regardless of what capacity they are acting in when their tortious deeds occur." *Pappas*, 923 F.2d 531, 538 (7th Cir. 1991). In *Pappas*, the plaintiffs argued that the defendant actuary had provided insufficient information which "left [plaintiff] with no choice but to rely on the conclusions of the Plan's actuaries, circumscribing his freedom of action so much that the actuaries assumed effective control of Plan administration." *Id.* at 538. The Seventh Circuit

rejected the argument, noting that relying on advice does not amount to ceding control or authority. *Id.* at 538.

Here, plaintiffs allege that the Reish attorneys gave extensive advice, much of which was mistaken at best and fraudulent at worst. Plaintiffs have not, however, alleged any facts that make it plausible that the Reish attorneys had any control or authority over the plan or had any discretionary responsibility for the administration of the Plan. It is not enough to allege the *conclusion* that the Reish attorneys "assumed control." Plaintiffs must allege facts that make that conclusion plausible. It is not enough to allege that the Reish attorneys sent and received communications on behalf of the plaintiffs. Those facts are as consistent with lawful attorney-client representation as with a breach of fiduciary duty. In short, plaintiffs have not plausibly alleged that the Reish attorneys acted as fiduciaries. Thus, plaintiffs have not alleged that the Reish attorneys have breached fiduciary duties.

As with the Reish defendants, plaintiffs also fail to allege adequately that Shippee was engaged in fiduciary functions. Plaintiffs have adequately alleged that Shippee gave them what amounted to bad advice, but that does not make him a fiduciary. Nor does the fact that the plaintiffs relied upon and followed Shippee's bad advice make Shippee a fiduciary. *Pappas v. Buck Consultants, Inc.*, 923 F.2d at 538. Plaintiffs' allegations make it clear that the decisions remained with plaintiffs. They allege that "[b]ased on Shippee's misrepresentations . . . *the Chua Medical Group . . . purchased* life insurance policies." (Complt. ¶ 13) (emphasis added). Plaintiffs also allege that Shippee "induced the Chuas to raise Dr. Yeh's salary in order to purchase additional PacLife policies funding the Plan *which Plaintiffs did*." (Complt. ¶ 34) (emphasis added). These allegations make clear the control was left with the plaintiffs, not

-15-

Shippee. Although plaintiffs include conclusory allegations that Shippee became a fiduciary by "controlling" various aspects of the Plan, there are no allegations that make that conclusion plausible. Thus, plaintiffs have failed to allege that Shippee breached any fiduciary duties.

Plaintiffs have failed to state a claim in Count I, and it is dismissed without prejudice

### 2. Count II

In Count II, plaintiffs seek to hold the defendants liable as co-fiduciaries for each other's breach of fiduciary duties. Because the Court has concluded that the plaintiffs have failed to allege any breach of fiduciary duties, this claim necessarily fails. Count II is dismissed without prejudice.

### C. Plaintiffs' claim for denial of benefits

ERISA § 502(a)(1)(B) provides a cause of action for participants and beneficiaries of ERISA plans "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). In Count III, participants Chua and Yeh seek relief pursuant to ERISA 502(a)(1)(B) for lost benefits. Chua and Yeh bring Count III against all defendants.

Defendants move to dismiss Count III on the grounds that they are not proper defendants with respect to a claim for denial of benefits. The Court agrees. The proper defendant with respect to a claim for denial of benefits is generally the plan itself, "because the plan is the obligor." *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 673 (7th Cir. 2011) ("To sue the administrator for plan benefits is like suing a corporation's CEO to collect a corporate debt."). Occasionally, a denial of benefits claim is appropriate against an employer, if the employer is the plan administrator and the employer is closely intertwined with the plan. *See Neuma, Inc. v.*

*AMP, Inc.*, 259 F.3d 864, 872 n. 4 (7th Cir. 2001). These defendants are neither the plan nor the employer, and plaintiffs have not cited a single case in which an attorney or an actuary has been held liable on a claim for denial of benefits under an ERISA plan. That is no surprise, because to hold these defendants liable would be like holding an attorney liable for his client's breach of contract. These defendants are not proper defendants for a denial of benefits claim.

Accordingly, the Court grants defendants' motions to dismiss Count III. Count III is dismissed with prejudice.

### D. Count IV for attorneys' fees

In Count IV, plaintiffs assert that they are entitled to attorneys' fees. Because, as defendants point out, only prevailing parties are entitled to attorneys' fees under ERISA and because the Court is dismissing the other three counts, Count IV is dismissed without prejudice.

### E. Plaintiffs' motion to amend

Plaintiffs previously filed an amended complaint, which Shippee asks the Court to strike. Plaintiffs have, after the fact, asked the Court's permission for their prior filing. The plaintiffs' amended complaint does not cure all of the deficiencies pointed out in this opinion. Accordingly, the Court grants Shippee's motion to strike and denies plaintiffs' motion for leave to file.

The Court will, however, grant plaintiffs 28 days in which to file a second amended complaint consistent with this opinion.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant Shippee's motion [16] to dismiss. As to Shippee, Count III is dismissed with prejudice and Counts I, II and IV are

dismissed without prejudice. The Court grants the Reish defendants' motion [12] to dismiss. Plaintiffs Chua and Chua Medical's claims against the Reish defendants are dismissed with prejudice. Plaintiff Yeh's Count III against the Reish defendants is dismissed with prejudice. Plaintiff Yeh's Counts I, II and IV against the Reish defendants are dismissed without prejudice. Shippee's motion [31] to strike is granted, and plaintiffs' motion [36] to amend is denied.

Plaintiffs are granted 28 days in which to file a second amended complaint, should they so choose.

ENTER:

*George M. Marovich* (signature)

George M. Marovich
United States District Judge

DATED: September 10, 2013